**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **LEONARD W. SHELTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. EP-08-CV-26-DB-ML** |
| | ) | |
| **EL PASO COUNTY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, LEONARD W. SHELTON, a prisoner in state custody, filed an amended *pro se*[1] complaint pursuant to 42 U.S.C. § 1983, alleging that El Paso County violated his First Amendment right to the free exercise of his religion and his right to Equal Protection.  Both Plaintiff and Defendant have filed motions for summary judgment.  For the reasons set forth below, the Court recommends that Plaintiff's motion be **DENIED** and Defendant's motion be **GRANTED**.

## PROCEDURAL HISTORY

Plaintiff is currently in the custody of the Texas Department of Criminal Justice-Correctional Institutions Division, at the Byrd Unit in Huntsville, Texas.  **Docket Entry ("D.E.") 76** (Notice of Change of Address).  Plaintiff was in custody at the El Paso County Jail Annex, in El Paso, Texas

---

[1] Because Plaintiff is proceeding *pro se*, the Court has read his complaint and pleadings liberally.  ***See* Haines v. Kerner, 404 U.S. 519, 520 (1972)** (*pro se* pleadings are held to less stringent standards than are pleadings drafted by lawyers).

1

from approximately June 6, 2007, to April 29, 2008.  **D.E. 15 at 1, D.E. 35 at 1** (Plaintiff's Amended Objections to the Report and Recommendation of the Magistrate Judge ("R&R")).

On January 24, 2008, Plaintiff filed an application to proceed *in forma pauperis* to prosecute a § 1983 complaint.  **D.E. 1.**  Adopting in part and rejecting in part a R&R entered by Magistrate Judge Michael S. McDonald, the United States District Judge David Briones found Plaintiff's allegations—that Defendant interfered with Plaintiff's ability to exercise his religion when Defendant's employees denied him his personal Quran and refused to provide him with a blanket or towel to use as a prayer rug—were sufficient to state a claim upon which relief may be granted, granted Plaintiff's *in forma pauperis* application, and remanded the cause to Judge McDonald for further proceedings.  **D.E. 7** (R&R); **D.E. 16 at 4-5** (District Court Order).

When Defendant's motion to dismiss was granted because Plaintiff had named a non-jural entity as defendant, Plaintiff was given an opportunity to amend his complaint.  **D.E. 24** (Def's Motion to Dismiss); **D.E. 26** (Pl's Response); **D.E. 28** (R&R); **D.E. 30** (District Court Order). Plaintiff's amended complaint was subsequently dismissed as to all defendants except for El Paso County.  **D.E. 34** (Amend. Compl.); **D.E. 42** (R&R); **D.E. 45** (Def's Objections to R&R); **D.E. 46** (Pl's Response); **D.E. 47 (District Court Order).**

Subsequently, Defendant's motion to dismiss for failure to state a claim and Plaintiff's motion for default judgment were both denied and a deadline was set for filing dispositive motions. **D.E. 56** (Def's Motion to Dismiss); **D.E. 58** (Pl's Motion for Default Judgment); **D.E. 60** (R&R); **D.E. 63** (District Court Order).

Plaintiff filed a motion for summary judgment on January 25, 2010, **D.E. 67**, and a supplemental motion for summary judgment on February 18, 2010. **D.E. 70.** Defendant filed a motion for summary judgment and response to Plaintiff's motion on February 17, 2010. **D.E. 77.**

On June 30, 2010, Magistrate Judge McDonald entered an order transferring Plaintiff's case to this Court. **D.E. 78.**

## PLAINTIFF'S CLAIMS

Plaintiff claims that Defendant violated his First Amendment rights to the free exercise of religion while he was a prisoner in the El Paso County Jail Annex. **D.E. 34 at 4; D.E. 35 at 4.** Specifically, Plaintiff asserts that Defendant, pursuant to jail policy, refused Plaintiff possession of or access to his personal Quran and prayer rug and refused to provide a softcover Quran or an additional blanket or towel to use during his prayers. **Id.** He further asserts that Defendant violated his constitutional right to Equal Protection by failing to make the same provisions available (services, materials, or religious representatives) for him as it did for similarly situated inmates of other faiths. **D.E. 15 at 2-3; D.E. 35 at 3-6; D.E. 67 at 3.**

Plaintiff alleges that he had a personal Quran, but was required to send it out because he was not allowed to have a hardback book. **D.E. 1-1 at 7 (**Grievance stating that he had a Quran in his property but had to send them out because the jail administration said he could not have hardback books**); D.E. 15 at 3-4; D.E. 19 at 7** (Amend. Complaint); **D.E. 35 at 3, 5.** He alleges that he attempted to get it back, but was denied both possession of and access to it. **D.E. 15 at 3-4; D.E. 35 at 5.** Plaintiff asserts that he attempted to obtain a Quran or an address to one of the Islamic Centers in El Paso from the jail ministry. **D.E. 1-1 at 7.** He alleges that he was informed that the ministry did not have and was unable to get what he had requested, that he had been given the only

address that they had, that the official had tried in the past to get things from a Muslim organization and was told that if you were a true Muslim you would not be in jail, but that the official would try one more time to get at least a Quran.  **D.E. 1-1 at 11-12.**  Plaintiff argues that denying him possession of or access to his own Quran was not reasonably related to a legitimate penological interest where no alternative means of exercising his rights were made available.  **D.E. 15 at 3-4; D.E. 35 at 5.**

Similarly, Plaintiff alleges that he had a prayer rug but was told by staff in the property room that he was not allowed to have it in his possession.  **D.E. 1-1 at 7-8.**  He alleges that he was given an additional blanket which he used as a makeshift prayer rug for months, but that it was confiscated and not returned to him.  **D.E. 1-1 at 7; D.E. 15 at 3-4; D.E. 35 at 5.**  Plaintiff alleges that he used the grievance procedure to attempt to obtain authorization for an extra blanket or towel for his prayers.  **D.E. 1-1 at 8, D.E. 35 at 5.**  Plaintiff argues that confiscating his rug and disallowing him an extra towel or blanket was not reasonably related to a legitimate peneological interest.  **D.E. 35 at 5.**

Plaintiff seeks declaratory and injunctive relief as well as $250,000 in compensatory, exemplary, and punitive damages.  **D.E. 34 at 4; D.E. 35 at 8; D.E. 46 at 3; D.E. 58 at 2.**

## DISCUSSION

### I.  Summary Judgment Standard

Plaintiff argues that he is entitled to summary judgment as a matter of law because the court previously found that his claims were sufficient to state a claim upon which relief may be granted.

**D.E. 67; D.E. 70.**  To be entitled to or survive summary judgment, however, a Plaintiff must do more than state a claim upon which relief may be granted.[2]

Summary judgment is proper where the pleadings and evidence on file demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." **Fed. R. Civ. P. 56(c).**  A party seeking summary judgment bears the initial burden of proving the absence of a genuine issue of material fact.  **Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)**.  Once the movant carries this burden, the burden shifts to the nonmovant to show the existence of a genuine issue for trial.  **Id., at 324-325.**  Conclusory allegations are not competent summary-judgment evidence and are insufficient to defeat a motion for summary judgment.  **Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996).**

All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  **Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)**.  "If the record, viewed in this light, could not lead a rational trier of fact to find for [the nonmoving party], there is no genuine issue for trial, and summary judgment is proper.  If, on the other hand, the factfinder could reasonably find in [the

---

[2] Defendant's motion to dismiss relied in part on documents outside of the pleadings and arguments regarding the merits of Plaintiff's claims. **D.E. 60 at 13.**  Further, the Magistrate noted that the District Court had already determined that Plaintiff's allegations that he was denied access to his personal Quran and denied a blanket to use as a prayer rug were sufficient to state a claim and had stated that it was "unwilling to accept Defendant's unsubstantiated and conclusive assertions that property restrictions on prayer rugs are clearly related to the legitimate penological interest of enforcing discipline or that Shelton's complaint regarding the provision of a Qu'ran is spurious." **Id., (citing D.E. 47 at 3-4).**  The Magistrate Judge found that part of Defendant's motion should be construed as a motion for summary judgment for which all parties must be given a reasonable opportunity to respond. **Id.**  The summary judgment standard was set forth. **Id.**  Plaintiff was put on notice as to what was required of him to defeat Defendant's motion for summary judgment.

nonmovant's] favor, then summary judgment is improper." **Kelley v. Price-Macemon, Inc.,** 992 F. 2d 1408, 1413 (5th Cir. 1993)(internal citations omitted).

## II.    Section 1983

Generally, to succeed on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate the violation of a right secured by the Constitution and laws of the United States committed by a person acting under color of state law. **West v. Atkins,** 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); **Biliski v. Harborth,** 55 F.3d 160, 162 (5th Cir. 1995).

To establish county liability under § 1983, a plaintiff must demonstrate that the enforcement of an official county policy or custom was the moving force behind the alleged illegal or unconstitutional action depriving the plaintiff of constitutional or federal rights. **Williams v. Kaufman County,** 352 F.3d 994, 1013-14 (5th Cir. 2003)(citing **Colle v. Brazos County,** 981 F.2d 237, 244 (5th Cir. 1993); **Bryan County v. Brown,** 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)); **Piotrowski v. City of Houston,** 237 F.3d 567, 578 (5th Cir. 2001) (citing **Monell v. Dept. of Soc. Svcs.,** 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38 (1978)).  An official policy or custom is: (1) "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) "[a] persistent, widespread practice of city officials or employees, which, though not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy" about which such officers of the governing body has actual or constructive knowledge. **Webster v. City of Houston,** 735 F.2d 838, 841 (5th Cir. 1984)(en banc).

Even a facially lawful policy may constitute the moving force of a constitutional violation where it led an employee to violate a plaintiff's rights and the plaintiff shows that the policy was implemented with "deliberate indifference" as to its known or obvious consequences. **Williams v. Kaufman County**, 352 F.3d at 1014 n. 66.

III.    **First Amendment- Free Exercise of Religion**

Although imprisonment necessarily entails a loss of many rights, prisoners retain the First Amendment right to the free exercise of religion, though such right may be limited by prison regulations that are reasonably related to legitimate penological interests such as crime deterrence, prisoner rehabilitation, and institutional security. **O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); Cruz v. Beto, 405 U.S. 319, 321-322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).** There are four factors courts consider in determining whether the requisite reasonable relationship exists:

> (1) whether there is a 'valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it';
>
> (2) 'whether there are alternative means of exercising the right that remain open to the inmates';
>
> (3) 'the impact that accommodation . . . will have on guards and other inmates, and on the allocation of other resources generally'; and
>
> (4) whether there are 'ready alternatives that could fully accommodate[] the prisoner's rights at de minimis cost to valid penological interests.'

**Mayfield v. Texas Dept. of Crim. Justice, 529 F.3d 599, 607 (5th Cir. 2008) (quoting Turner v. Safley, 482 U.S. 78, 89-91, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)).** Further, such regulations must operate in a neutral fashion. **Id.**

7

With respect to the four factors, the Fifth Circuit has held that "...rationality is the controlling factor, and a court need not weigh each factor equally." **Mayfield v. Texas Dept. of Crim. Justice, 529 F.3d at 607.**  Additionally, in weighing these factors, courts must accord prison officials broad discretion and deference in making and administering policies that are needed to maintain institutional order.  **Thornburgh v. Abbott, 490 U.S. 401, 416, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).**  In considering a challenge to a prison policy as applied, the proper inquiry is whether the actions of the prison officials are reasonably related to legitimate penological interests.  **Thornburgh v. Abbott, 490 US at 404.**

If a court is reviewing an action taken by prison officials rather than a regulation, the same standard is applicable to determine whether the prison official's act is constitutionally permissible. **Jackson v. Cain, 864 F.2d 1235, 1248 (5th Cir. 1989).**  However, an "administrative foul-up" depriving an inmate of the right to practice his religious beliefs may amount to mere negligence, insufficient to support a claim for violation of the First Amendment.  **Eason v. Thaler, 73 F.3d at 1327 n. 2** (suggesting that foul-up in providing pork-free inmate with pork meal would amount to mere negligence and would not amount to a violation of the Free Exercise clause of the First Amendment).

Also, specific to Plaintiff's claims, there is no "constitutional or legal requirement that the government provide materials for every religion and sect practiced in this diverse country."  **Cruz v. Beto, 405 U.S. at 323 (Burger, C.J., concurring).**  But religious "materials cannot be denied to prisoners if someone offers to supply them."  **Id.**

8

### A.      Denying Plaintiff Possession of his Personal Quran

Plaintiff complains that he had a Quran, but that prison officials required him to send it out, pursuant to policy, because, as he was told, he was not allowed to have a hardback book in his possession.  **D.E. 1-1 at 7; D.E. 15 at 3-4; D.E. 35 at 3.**

The El Paso County Jail Annex policy specifically prohibits the possession of hardback books by any inmate, in the context of both general and religious inmate services.  **D.E. 56 at 23 (Exh A at 10); D.E. 77 at 20.**  The El Paso County Sheriff's Office Detention Services Division, Inmate Handbook, provides:

> . . .
> XIV.   Services and Activities
> . . .
> B.      Mail- . . .
>       10.      The following will not be accepted:
>       . . .
>       ***f.***      ***Posters; hardcover books; jewelry.***
>       11.      The following will be accepted:
>       . . .
>             B.      Soft cover books or magazines sent directly from the publisher or bookstore.  . . .

**D.E. 56 at 21-23** (emphasis in original).

Chapter 4.21 of the Detention Services Policy and Procedures Manual, Inmate Religious Services Policy provides:

> III.    Procedures
> . . .
>             G.      No jewelry, medication, ***hard cover books***, non-religious literature, candy, gum, stamps, paper, money, pens, or any other contraband will be given to the inmates.
> . . .

**D.E. 56 at 26** (emphasis in original).

9

Chapter 10.04 of the El Paso County Sheriff's Office Policies and Procedures Manual, Jail Ministry, provides:

I.     Procedures
       . . .
       O.     All donated materials must be religious in nature. Donated materials given to the Jail Ministry cannot be designated for a specific inmate and therefore will not be accepted.

II.    Jail Ministry Rules of Conduct and Behavior
       . . .
       C.     Items are contraband, which is identified as anything that is not authorized in the inmate floors or pods. The following items are prohibited from secured areas but are not limited to:
              . . .
              7.     Hard cover books
              . . .
       D.     Other items which will not be given to inmates include:
              . . .
              8.     any item that is not authorized by the detention facilities.

**D.E. 77 at 19-21.**

Lieutenant Michaela Hebeker, who has been with the El Paso County Sheriff's Office for over eighteen years and whose duties include acting as liaison between inmates and the jail ministry, provided an affidavit explaining the reason for the jail's prohibition against hardback books. **D.E. 77 at 32-35** (Affidavit of Lt. Michaela Hebeker).

7.     "Hardback books are not allowed in the Jail Annex due to the jail facility administration security concerns involving the use of the hardback books to hide contraband such as needles within the binding material and because the hardness of the binding material may be misused as a weapon against other inmates or staff. If hardback books were allowed, there would be an increased administrative burden involved in checking each hardback book for contraband items, such as needles. This increased administrative burden may even result in the need to hire additional staff or screening equipment such as metal/drug detectors to accomplish the additional scrutiny burden.

8.      "Prison security is of great concern to the detention facility.  I believe that prohibiting hardback books, regardless of the subject area, is one method of increasing prison security.

**Id.,** at 34-35.

In his affidavit, Detention Officer David Peña had this to say regarding hardback books:

3.      ". . . Hardback books of any type are not provided to inmates for security and safety reasons.
. . .
8.      "The reason the detention facility does not provide hard cover books is they can be used as weapons against another inmate or an officer.  Additionally, weapons can be made from the book's hard back material.

9.      "Prison security is of great concern to the detention facility.

**D.E. 77 at 36-39** (Affidavit of Detention Officer David Peña).

Defendant argues that these are valid penological concerns.  **D.E. 77 at 4.**

Plaintiff does not dispute that hardbound books pose a substantial threat to prison security.

*See* **D.E. 67, 70.**  He does not suggest that the policy prohibiting hardbound books is an exaggerated response to a legitimate need to maintain institutional security.  Plaintiff asserts only that the items he requested "did not create a peneological interest no more than those imposed by inmates of other religions that were similarly situated as Plaintiff."[3]  **D.E. 70 at 3.**  The rule prohibiting hard bound books is not related to any particular religious belief or practice; it is neutral.

The Supreme Court has stated "[i]t hardly needs to be emphasized that hardback books are especially serviceable for smuggling contraband into an institution; money, drugs, and weapons easily may be secreted in the bindings."  **Bell v. Wolfish, 441 U.S. 520, 550-51, 99 S.Ct. 1861, 60**

---

[3] Plaintiff's Equal Protection claim is addressed in section V, below.  Plaintiff, however, does not contend, or provide evidence to suggest, that any other inmate was allowed religious materials in hardback format.

11

**L.Ed.2d 447 (1979).**   Although the Supreme Court found blanket bans on publications unconstitutional, it approved of the restriction on hardback books, because it was content neutral, there were alternative sources to obtain softcover formats, and the inmates were incarcerated for only a short period of time.  **Id., 441 U.S. at 551-52.**

Defendant cites other cases in which restrictions on hardbacked books, including religious materials, have been upheld by other courts.  **D.E. 77 at 11 (citing Tate v. Lewis, No. 86-14, 1986 WL 12687, 1986 U.S. Dist. LEXIS 18397 (E.D. La. Oct. 1986); Mustafa-Ali v. Irvin, No. 2:03cv594-MTP, 2007 WL 2302278, 2007 U.S. Dist. Lexis 58477, at \*7 (S.D. Mis., Aug. 9, 2007)).**  In *Tate v. Louis*, defendants had removed the hardcover backing from plaintiff's Holy Quran pursuant to policy prohibiting hardcover books.  **Tate v. Louis, 1986 WL 12687.**  The District Court concluded after a trial: "[w]e do not find that a decision to exclude hardcover books to be unreasonable.  It is conceivable that hardback books, whether in a prison environment or otherwise, could be used as a 'weapon' to cause injury to another."  **Id.**  In *Mustafa-Ali v. Irvin*, the District Court determined on summary judgment review that the safety considerations behind allowing only soft-cover books were self-evident and the ability to possess a soft-cover Quran provided a sufficient alternative such that jail policy prohibiting hardcover books was not a substantial burden on plaintiff's ability to freely exercise his faith.  **Mustafa-Ali v. Irvin, 2007 WL 2302278, at \*7.**

Other courts have also found the prohibition of hardback books reasonable, even with respect to religious materials.  In an unpublished decision, the Fifth Circuit upheld such a prohibition, finding that the purchase of softbound books in lieu of hardbound books is a reasonable alternative means of exercising a right.   **Leachman v. Thomas, No. 99-20209, 229 F.3d 1148, 2000 WL 1239126 (5th Cir. 2000)**(not designated for publication).  The regulation under consideration

contained exceptions for correspondence classes and situations in which only hardbound books were available such as publications from the Church of Jesus Christ of Latter Day Saints and the Gideons that each produce their respective religious tracts only in hardbound form. **Id.** In *Pressley v. Beard, et al*, the Third Circuit affirmed the District Court's grant of summary judgment for the defendant, finding that the confiscation of the prisoner's hard-bound Quran and prayer rug was intended to further legitimate penological objectives and therefore did not violate free exercise of religion where evidence was submitted that inmates were able to practice their faith without access to a prayer rug or a hard-bound copy of the Quran. **Pressley v. Beard, et al, No. 07-4150, 266 Fed. Appx. 216, \*218-19 (3rd Cir. 2008)**(not designated for publication). Finally, in *Skelton v. Pri-Cor, Inc.*, the Sixth Circuit affirmed the District Court's grant of summary judgment for the defendant finding that the decision to refuse delivery of a hardcover Bible was reasonably related to legitimate penological interests and the center would allow possession of a softcover Bible. **Skelton v. Pri-Cor, Inc., 963 F.2d 100, 102-104 (6th Cir. 1991).**

Defendant argues that Plaintiff was not prohibited from possessing a soft-cover Quran. **D.E. 77 at 11.** Some courts have found that a regulation banning hardback books without exception was unreasonable where materials were not available in soft-cover format. ***See* Reimer v. Hastings, No. 93-8642, 30 F.3d 1492, 1994 WL 398363 (5th Cir. 1994)**(not designated for publication)(affirming injunctive relief mandating that inmates be allowed to keep magazines and books in their cells and if only a hardback book is available, the inmate should be allowed one such book in his cell which pertains to the course he is pursuing because the underinclusive nature of the exclusion indicated that it was an exaggerated response to potential fire hazards and because there was no evidence that fashioning weapons from books was a real concern or that hardback books provide better material

for making weapons than other materials); **Jackson v. Elrod, 881 F.2d 441 (7th Cir. 1989)**(finding blanket prohibition against hardcover books unconstitutional where inmate was denied both hard and soft-cover materials, denied access to such materials in the library, and materials sought were not available in soft-cover).  Plaintiff, however, has neither alleged nor provided summary judgment evidence to suggest that the Quran is not available in a soft-cover format.  Nor has Plaintiff alleged that he attempted and was unable to obtain a soft-cover Quran directly from a publisher or bookstore with his own resources or with the help of family or friends.  The report of his jail account provided to support his application to proceed *in forma pauperis* reflects that Plaintiff periodically had a balance of up to twenty dollars in his account.  **D.E. 1 at 3.**

Regarding the impact that accommodation of the asserted right would have on other inmates, guards, and prison resources, Defendant echoes Lt. Hebeker's statement regarding the increased administrative burden involved were hardback books generally allowed, and argues that the added security protocols to maintain facility security if hardback books were provided to all inmates would impose more than *de minimis* cost on the jail.  **D.E. 77 at 9-11.**  Defendant adds that if Plaintiff were allowed to have his hardback Quran, even though hardback books are not generally allowed, it may be perceived as favoritism which would have a negative effect on morale.  **D.E. 77 at 10.**  Plaintiff has failed to provide evidence that accommodation would not have such a negative effect on the facility, guards, and other inmates or that the added security required if hardback books were allowed would not impose more than *de minimis* cost.

Plaintiff has failed to demonstrate that there exists a genuine issue of material fact as to the reasonableness of this prohibition, on its face or as applied.  Even viewed in the light most favorable to Plaintiff, a rational trier of fact could not reasonably find in favor of Plaintiff on this issue based

on the evidence in the record.  Rather, the pleadings and the evidence on record demonstrate that Defendant is entitled to judgment as a matter of law on Plaintiff's claim that Defendant violated his First Amendment right to the free exercise of religion by requiring Plaintiff to send out his hardbound Quran pursuant to policy prohibiting possession of hardbound books.

### B.        Failure to Provide Plaintiff a Soft-cover Quran

With respect to Defendant's failure to provide Plaintiff with a soft-cover copy of the Quran to replace his hard-bound copy, Plaintiff complains that Defendant failed to take the necessary steps to make ways for Plaintiff to exercise his right to practice religion through donations from outside sources, placing the burden on Plaintiff to obtain the things he needed.  **D.E. 15 at 2-5.**

As previously noted, there is no constitutional requirement that Defendant provide religious materials to Plaintiff.  **Cruz v. Beto, 405 U.S. at 323** (Burger, C.J., concurring).  Although Defendant cannot deny a prisoner religious materials if someone offers to supply them, Plaintiff has not identified a constitutional requirement that the government take certain steps to solicit such donations.  Nor does Plaintiff allege that anyone offered to supply Plaintiff a soft-cover Quran.  To the contrary, evidence in the record, submitted by both Plaintiff and Defendant, indicates that Defendant did not have a soft-cover Quran to provide to Plaintiff and attempted to locate someone who would offer to supply Plaintiff a soft-cover Quran, but without success.  **D.E. 1-1 at 11-12; D.E. 77 at 37-39** (Affidavit of Officer Peña).

Plaintiff has failed to demonstrate that there exists a genuine issue as to any material fact regarding his claim that Defendant violated his First Amendment right to the free exercise of religion by failing to provide Plaintiff with a soft-cover Quran.  Even viewed in the light most favorable to Plaintiff, a rational trier of fact could not reasonably find in favor of Plaintiff on this issue based on

the evidence in the record.  The pleadings and the evidence in the record demonstrate that Defendant is entitled to summary judgment as a matter of law.

### C.      Prayer Rug

Plaintiff contends that Defendant violated his First Amendment right to the free exercise of religion when he was denied use of either his personal prayer rug, which was kept with his personal belongings by the Jail Annex personnel, or the use of an extra blanket as a prayer rug, after the extra blanket he had been using was confiscated by Jail Annex personnel and was not returned to him. **D.E. 1-1 at 8; D.E. 34 at 4.**  Defendant asserts that Plaintiff's personal prayer rug was kept in property pursuant to policy and that the confiscated additional blanket was returned to Plaintiff.  **D.E. 77 at 12, 37-39** (Affidavit of Officer Peña)**; D.E. 56 at 34** (Inmate Notes Screen dated 4/10/08).

#### 1.      Denying Plaintiff Possession of his Personal Prayer Rug

The Sheriff Department's regulation governing prisoner initial intake of property provides:

IV.      "Initial Intake"
. . .
G.      After all paperwork has been reviewed, the arresting officer will remove the prisoner's restraints and place all of the prisoner's property, except for his clothing, on the counter for inventory.
. . .
X.      Personal Property (4A-04)
A.      All inmate property will be secured either in the male or female property room. ...

**D.E. 77 at 26, 30** (Affidavit of Lt. James D. Nance).

Defendant asserts that no exceptions are made to this regulation, that the regulation is neutral, and that the regulation is premised on accountability as well as prison security for both the inmates and the detention officers.  **D.E. 77 at 12, 31.**  The policy aids in preventing contraband, such as

weapons, drugs or cash from entering the prison and insuring that inmate property remains secure until they are released.  **Id., at 12, 27 (G-M).**

Plaintiff has not presented any summary judgment evidence to raise a genuine issue of material fact regarding whether the intake and personal property storage policies are rationally related to the legitimate penological interest of prison security and accountability.  Plaintiff also acknowledged that, absent his personal prayer rug, he was afforded other opportunities and accommodation to practice his faith; he was able to use an extra blanket as a prayer rug.  Plaintiff does not allege that this accommodation was inadequate.

Even viewed in the light most favorable to Plaintiff, a rational trier of fact could not reasonably find in favor of Plaintiff on this issue based on the evidence in the record.  The pleadings and evidence of record demonstrate that Defendant is entitled to summary judgment as a matter of law on Plaintiff's claim that refusing Plaintiff possession of his personal prayer rug while at the facility violated his First Amendment right to the free exercise of his religion.

### 2.    Denying Plaintiff Additional Blanket to Use as Prayer Rug

Officer Peña states in his affidavit "[a]s additional accommodation the Plaintiff was provided with a blanket for use in the practice of his religion. . . . The Plaintiff's blanket was taken from his cell once during a shake-down of the cell block; however, it was returned to him."  **D.E. 77 at 12, 38-39 nos. 10-11** (Affidavit of Officer Peña).  Plaintiff alleges that he was in possession of an additional blanket from the time he had been in his room to the time it was confiscated.  **D.E. 1-1 at 8.**  Plaintiff's grievance complaining that his extra blanket had been taken was dated December 27, 2007.  **Id.**  Officer Peña does not provide exact dates of when the blanket was first provided or when it was taken during the shake-down.  Defendant does not present any other evidence on

summary judgment as to these dates.  Thus, the record supports the inference that Plaintiff's extra blanket was taken on or shortly before December 27, 2007.

Officer Peña also does not allege a specific date on which Plaintiff was again provided an additional blanket to use as a prayer rug.  He does, however cite to a note entered in Defendant's computer system, which appears on Plaintiff's "Inmate Notes Screen" that states "may have extra blanket for use as prayer rug." **D.E. 56 at 34.**  The note is dated April 10, 2008. **Id.**  In his objections filed July 29, 2008, Plaintiff stated that the extra blanket had never been returned.  **D.E. 15 at 3.**  Yet Plaintiff has not provided any summary judgment evidence contradicting Officer Peña's assertion, based on the inmate notes screen, to demonstrate the existence of a genuine issue of material fact regarding whether Plaintiff's additional blanket was returned to him.  His mere assertion that it was not is insufficient to survive Defendant's motion for summary judgment.

Thus, the evidence on summary judgment review reflects that Plaintiff somehow obtained an extra blanket that he was able to use as a prayer rug from at least June 6, 2007, to December 27, 2007.  Plaintiff alleged that there had been shake-downs before and that his additional blanket had not previously been taken.  **D.E. 1-1 at 8.**

The Court notes that the Detention Services Policy and Procedures Manual regarding Initial Intake Policy, Chapter 5.01, section IX.D.3, provides that upon intake a Property Officer will issue the inmate *one* blanket, among other items.  **D.E. 77 at 33.**  It is not clear how Plaintiff initially obtained an additional blanket, whether he had obtained permission to have an additional blanket as a religious accommodation, or whether such permission had previously been noted such that the officer performing the shakedown in December 2007 should have been aware of it.  Even assuming all of these facts in Plaintiff's favor, however, they would establish nothing more than at most

18

negligence in removing Plaintiff's additional blanket.[4]   Such an "administrative foul-up" is insufficient to support a claim for violation of the First Amendment.  **Eason v. Thaler, 73 F.3d at 1327 n. 2.**   Nor does it amount to a pattern displaying wanton prejudice amounting to a policy to violate Plaintiff's right to exercise his faith.

In response to Plaintiff's grievance dated December 27, 2007, Plaintiff was told "You would need to write to the administrative Lt." **D.E. 1-1 at 8.**   Although it appears Plaintiff was without an extra blanket to use as a prayer rug for less than four months, Plaintiff has neither alleged nor provided evidence to demonstrate what actions he took, or at what time after receiving that response, to pursue obtaining permission through the proper channels to possess an additional blanket for use as a prayer rug.

Further, regardless of whether Plaintiff was denied an extra blanket as a religious accommodation, Defendant argues that Plaintiff does not allege that jail officials prevented him from engaging in prayers multiple times a day as is the Islamic tradition.  **D.E. 77 at 9.**   Thus, Defendant argues, Plaintiff retained a reasonable opportunity to exercise his faith.  **Id.;** *see also*  **Mayfield v. Texas Dept. of Crim. Justice, 520 F.3d at 609.**   Plaintiff has not provided any summary judgment evidence to demonstrate that there is a genuine issue of material fact regarding whether he was permitted to engage in such prayers.

Even viewed in the light most favorable to Plaintiff, a rational trier of fact could not reasonably find in favor of Plaintiff on this issue based on the evidence in the record.  Rather, the pleadings and evidence of record demonstrate that Defendant is entitled to summary judgment as a

---

[4]  Plaintiff has not alleged and provides no evidence to suggest that the officer who took the extra blanket was actually aware that Plaintiff had permission to possess an additional blanket or that Plaintiff was using the additional blanket as a prayer rug.

matter of law on Plaintiff's claim that denying Plaintiff possession of an additional blanket to use as a prayer rug for four months of his detention at the facility violated his First Amendment right to the free exercise of his religion.

### D.      Access to Muslim Representative

In his original complaint, Plaintiff alleged that he was denied contact with a representative from the Muslim religion. **D.E. 1-1 at 3.** For the factual details supporting this allegation, Plaintiff referred to his exhibits. **Id.** In a grievance, Plaintiff stated that he had requested an address for one of the Islamic Centers in El Paso. **Id., at 7.** In a note from the jail ministry, he was told that he had been given the only address the ministry had for a Muslim representative. **Id., at 11.** The Magistrate Judge pointed out in his R&R that Plaintiff had not alleged that any representative had come to the jail to contact Plaintiff on any particular date and time such that Plaintiff was denied contact. **D.E. 7 at 6.** In his objections to the R&R, Plaintiff alleged that the jail ministry had provided him "with addresses of individuals and entities (outside sources) some of which were not deliverable addresses." **D.E. 15 at 2.** The District Court did not find that Plaintiff's allegations on this issue stated a claim upon which relief may be granted. **D.E. 16 at 4-5.** Plaintiff did not reassert this claim in his amended complaint. **D.E. 34 at 4.**

Defendant argued that Plaintiff faulted Defendants for the jail ministry's lack of success in inviting a representative from the Islamic community to the jail and that Plaintiff did not allege that Defendants prevented someone from the Islamic community from visiting Plaintiff while he was incarcerated at the jail. **D.E. 45 at 9.** Defendant suggested that Plaintiff's difficulties in securing a compliant Islamic representative may have been caused by a dearth of clergy and authorized

volunteers in the area given that Muslims make up only .9% of the population in El Paso County. **Id.**

Plaintiff's allegations fail to state a claim that his right to exercise his faith by contacting a Muslim religious representative was violated by an official policy or custom.  Plaintiff acknowledged that the jail ministry provided him with addresses for Muslim sources and did not allege that he was prevented from writing to those addresses; he alleges that only some of the addresses provided were undeliverable.  Plaintiff did not allege what responses he received, if any, from any attempt to correspond with contacts at the other addresses.  Further, even if all of the addresses provided by the jail ministry were undeliverable, Plaintiff did not allege that he was prevented from seeking contact information for representatives of his faith from any other source, such as family and friends.

Even if the allegations were sufficient to state a claim, however, viewed in the light most favorable to Plaintiff, a rational trier of fact could not reasonably find in favor of Plaintiff on this issue based on the evidence in the record.  The pleadings and evidence of record demonstrate that Defendant is entitled to summary judgment as a matter of law on Plaintiff's claim that the jail ministry's failure to provide him with additional addresses for Muslim contacts violated his First Amendment right to the free exercise of his religion.

      **E.**      **Pork-Free Diet**

In his original complaint, Plaintiff attached a grievance complaining that at least once a week the jail kitchen tries to serve him pork, while his diet is to be pork-free because of his faith as a Muslim.  **D.E. 1-1 at 9.**  Officer Peña responded to that complaint by informing Plaintiff that the jail kitchen does not serve pork.  **Id.**

The District Court did not enter a finding that Plaintiff's allegations regarding denial of his pork-free diet were sufficient to state a claim upon which relief may be granted.  **D.E. 16 at 4-5.**  The District Court recognized that prison officials need not respond to a prisoner's particularized religious dietary requests.  **D.E. 16 at 4 n.15 (citing Kahey v. Jones, 836 F.2d 948, 950-51 (5th Cir. 1988)**(upholding prison policy denying specially-tailored menu to accommodate the practice of Islam) and **Udey v. Kastner, 805 F.2d 1218 (5th Cir. 1986)**(explaining government interest sufficiently strong to outweigh prisoner's First Amendment right to be provided with special diet)).

In his amended complaint, Plaintiff reasserted his claim that Defendant was not allowing him his proper non-pork diet and that this was pursuant to jail policy.  **D.E. 34 at 4.**  Plaintiff did not identify a particular policy prohibiting Plaintiff from having a pork-free diet.  Nor has Plaintiff replied to Defendant's arguments or evidence regarding this claim.

Defendant argued that Plaintiff's dietary complaint was clearly frivolous under established Fifth Circuit jurisprudence.  **D.E. 45 at 8 (citing Baranowski v. Hart, 486 F.3d 112 (5th Cir. 2007)**(holding that prison officials' failure to provide kosher meals did not violate inmates free exercise rights)).  Defendant also provided evidence indicating that Plaintiff was provided with a dietary modification providing for no red meat.  **D.E. 56 at 5, 34** (Exh. B.  Inmate Notes Screen).

Plaintiff's allegations fail to state a claim that his right to exercise his faith by maintaining a pork-free diet has been violated by an official policy or custom.  Even if the allegations were sufficient to state a claim, however, viewed in the light most favorable to Plaintiff, a rational trier of fact could not reasonably find in favor of Plaintiff on this issue based on the evidence in the record.  Rather, the pleadings and evidence of record demonstrate that Defendant is entitled to

22

summary judgment as a matter of law on Plaintiff's claim that the jail kitchen's attempt to serve him pork violated his First Amendment right to the free exercise of his religion.

### F. RLUIPA

Plaintiff has not explicitly claimed that Defendant violated his rights under Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Magistrate Judge McDonald set forth the legal standard to assert a claim under RLUIPA in his initial R&R on June 4, 2008, and found that Plaintiff's allegations failed to assert such a claim. **D.E. 7 at 5-8.** The District Court did not find that Plaintiff's allegations were sufficient to state such a claim. **D.E. 16 at 4-5.**

RLUIPA provides that the government shall not "impose a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the burden furthers "a compelling governmental interest" and does so by "the least restrictive means." **42 U.S.C. § 2000cc-1(a); Cutter v. Wilkinson,** 544 U.S. 709, 714-15, 125 S.Ct. 2113, 2117-2118, 161 L.Ed.2d 1020 **(2005).** Plaintiff has incorporated some of the language from this standard into his subsequent filings, alleging that Defendant placed a substantial burden on Plaintiff's observation of his central religious beliefs without reasonable relation to any legitimate or apparent penological interest. **D.E. 15 at 3; D.E. 26; D.E. 29; D.E. 35 at 6-8.** This Court finds, however, that Plaintiff's allegations are insufficient to state such a claim or survive Defendant's motion for summary judgment.

The Fifth Circuit has held that under RLUIPA, it must first be determined whether the activities alleged to be burdened constitute a "religious exercise," and then whether the burden is substantial. **Mayfield v. Texas Dept. Of Crim. Justice,** 529 F.3d at 613 (citing **Adkins v. Kaspar, 393 F.3d 559, 567 (5th Cir. 2004)**. Although the religious exercise need not be central to the adherent's religious belief system, the adherent has the burden of demonstrating the honesty and

accuracy of his contention that the religious practice is important to the free exercise of his religion. **Adkins v. Kaspar, 393 F.3d at 570.**

Plaintiff has alleged that Defendant's policies have burdened the observation of his central beliefs. **D.E. 15 at 3; D.E. 26; D.E. 29; D.E. 35 at 6-8.** The Court interprets this to allege that having a Quran, material to use as a prayer rug, a pork-free diet, and contact with a Muslim religious representative are important to the free exercise of Plaintiff's religion. Although Plaintiff has not provided evidence to establish this fact, Defendant has not contested these implicit assertions.

The Fifth Circuit has determined that governmental action or regulation creates a "substantial burden" on a religious exercise if it "truly pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs." **Adkins v. Kaspar, 393 F.3d at 570.** That is, when it either (1) "influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between enjoying some generally available, non-trivial benefit, and following his religious beliefs." **Id.** A governmental action or regulation does not rise to the level of a substantial burden on religious freedom if it "merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." **Id.**

With respect to the Quran, Plaintiff's allegations fail to establish that Defendant's policies substantially burden his practice. Defendant's refusal to allow Plaintiff possession of his personal Quran, pursuant to policy prohibiting hardcover books, prevented Plaintiff from enjoying a benefit that is not otherwise generally available. It did not pressure Plaintiff to modify his religious behavior or significantly violate his religious beliefs. At most, it required Plaintiff to follow proper procedures to obtain a softcover Quran. As noted above, although he was unsuccessful in obtaining

24

a free softcover Quran from the Jail Ministry Program, Plaintiff does not allege that he attempted and

was unable to obtain a soft-cover Quran directly from a publisher or bookstore with his own

resources or the help of family and friends.

With respect to the additional blanket to use for prayer, Plaintiff's allegations also fail to

establish that Defendant's policies substantially burden his practice.  Without an additional blanket,

Plaintiff may have been influenced or pressured to choose between using his one blanket for prayers

or for covering his body, thus having to choose between his religious practice and enjoying a

generally available, non-trivial benefit.  The evidence in the record, however, reflects that the one-

blanket per inmate policy is not without exception and that accommodation was available.  The

response to Plaintiff's grievance informed Plaintiff of what step to take to obtain such

accommodation.  Defendant's summary judgment evidence reflects that Plaintiff did receive such

accommodation.  Although it is likely that Plaintiff's additional blanket was taken pursuant to the

one-blanket per inmate policy, as discussed above, Plaintiff has failed to allege or demonstrate that

this was more than mere negligence on the part of the officer enforcing the general policy.  Nor has

he demonstrated that the policy itself was implemented with "deliberate indifference" with this result

being a known or obvious consequence.

With respect to Plaintiff's attempts to contact a Muslim representative, Plaintiff's allegations

fail to establish that such contact is a religious practice necessary for the free exercise of his faith or

that Defendant's policies substantially burdened this need.  Moreover, the evidence in the record

reflects that the jail ministry did provide Plaintiff with the addresses it had for Muslim contacts in

the area.  Defendant's failure to provide Plaintiff with addresses of Muslim contacts who would

actually be willing to visit Plaintiff or donate the requested materials neither influenced him to act

in a way that violated his religious beliefs nor forced him to choose between practicing his faith or enjoying some generally available, non-trivial benefit.  At most, it made it necessary for Plaintiff to take additional steps to seek such information from other sources, such as friends and family. Plaintiff has failed to present any evidence to support his allegation that there existed an official policy pursuant to which he was denied contact with a representative from the Muslim faith willing and able to visit Plaintiff or provide the requested materials.  Viewed in the light most favorable to Plaintiff, the evidence and pleadings on record demonstrate that Defendant is entitled to summary judgment on any such claim.

With respect to Plaintiff's religious practice of consuming a pork-free diet, Plaintiff's allegations fail to establish that Defendant's policies substantially burden his practice.  Although Plaintiff alleged that at least once a week the kitchen attempted to serve him a pork product, he did not allege that he was forced to accept the pork product, or that refusing the product meant forgoing a generally-available non-trivial benefit.  Moreover, the evidence in the record reflects that the jail kitchen did not serve pork and that Plaintiff obtained a dietary accommodation of no red-meat. Plaintiff has failed to present any evidence to support his allegation that there existed an official policy pursuant to which he was denied a pork-free diet or that his practice of not eating pork was substantially burdened.  Viewed in the light most favorable to Plaintiff, the evidence and pleadings on record demonstrate that Defendant is entitled to summary judgment on any such claim.

## IV.   First Amendment- The Establishment Clause

In his motion for summary judgment, Plaintiff appears to allege, for the first time, that the effect of Defendant's Jail Ministry Program was to endorse one religious view while excluding the Muslim Religion, conveying a message of official preference for one religious view in violation of

the Establishment Clause. **D.E. 67 at 3, 5.** Plaintiff, however, has produced no evidence that the primary effect of Defendant's program, or its relevant policies, is to advance religion in violation of the Establishment Clause or that such creates an excessive "entanglement " between church and state. *See* **Lynch v. Donnelly, 465 U.S. 668, 679, 104 S.CT. 1355, 79 L.Ed.2d 604 (1984).**

> Lieutenant Hebeker stated in her affidavit:
>
> Inmates at the Jail Annex practice numerous religions and jail personnel do not discriminate against an individual because of his religious beliefs. The Sheriff's Office maintains an active jail ministry program which minister to the different religious needs. . . . The El Paso County Sheriff's Office has a written non-discriminatory policy in it's Inmate Handbook '...*It is the policy of the El Paso County Sheriff's Office not to discriminate against an individual because of gender, race, color, creed, religion, disability or national origin*...'' and based upon my experience the jail dutifully complies with that policy. . . . I have observed that inmates are free to participate in various religious practices. . . . At the time of Plaintiff's incarceration at the Jail Annex, and continuing through the present, a "Jail Ministry" program actively continued to provide access to services and materials for an inmates' individual religious needs. For some requests, it becomes necessary to depend on community resources causing a delay in services.

**D.E. 77 at 34.** Further, as noted above, the relevant policies about which Plaintiff complains are neutral as to religion.

Additionally, the uncontested summary judgment evidence establishes that members of the Jail Ministry program attempted to assist Plaintiff in obtaining the requested materials. **D.E. 1-1 at 12; D.E. 77 at 38** (Affidavit of Officer Peña). The uncontested evidence also reflects that the statement Plaintiff attributes to jail personnel was merely conveyed by them and made by representatives of the Muslim faith. **Id.** Although it may have been better not to convey such statement to Plaintiff, this does not evince a wanton pattern of prejudice.

Plaintiff has failed to demonstrate that there exists a genuine issue as to any material fact regarding this claim. Even viewed in the light most favorable to Plaintiff, a rational trier of fact

could not reasonably find in favor of Plaintiff on this issue based on the evidence in the record. Based on the pleadings and the evidence on record, Defendant is entitled to summary judgment as a matter of law as to Plaintiff's Establishment Clause claim.

## V.     Equal Protection

Plaintiff also claims that Defendant violated Plaintiff's right to Equal Protection, discriminating against him on the basis of his religion, by failing to meaningfully seek out volunteers of the Muslim faith in the same way Plaintiff claims Defendant has for inmates of other faiths, making provisions through donations for materials and programs to exercise their faith.  **D.E. 15 at 4-5; D.E. 35 at 3; D.E. 67 at 3.**  Defendant argues that Plaintiff has failed to offer any evidence to support his claims to raise a material question of fact regarding his Equal Protection claim.  **D.E. 77 at 14.**

Because the Equal Protection Clause requires only that "all persons similarly circumstanced shall be treated alike" and not that things different in fact or opinion be treated as if there were no difference, to succeed on an equal protection challenge, a plaintiff must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated.  **Plyler v. Doe, 457 U.S. 202, 215, 102 S.Ct. 2382, 72 L. Ed.2d 786 (1982); McCleskey v. Kemp, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).**  Purposeful discrimination is action taken "at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." **Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995).**  The Fourteenth Amendment does not demand "that every religious sect or group within a prison-however few in numbers- must have identical facilities or personnel." **Cruz v. Beto, 405 U.S. at 322 n. 2.**

28

In her affidavit, Lieutenant Hebeker stated that, including the time that Plaintiff was incarcerated at the Jail Annex, the El Paso County Sheriff's Office has a written non-discriminatory policy in it's Inmate Handbook, with which in her experience the jail dutifully complies, that inmates at the Jail Annex practice numerous religions, that the Sheriff's Office maintains an active jail ministry program ministering to the different religious needs, and that jail personnel do not discriminate against inmates based on religious beliefs. **D.E. 77 at 34.**

Officer Peña stated in his affidavit that, based on his "experience and understanding of the Sheriff's Office and Jail Annex policy, every prisoner can access a member of the jail ministry." **D.E. 77 at 38.**

Plaintiff acknowledges that there is no written policy pursuant to which the Jail Ministry discriminates against inmates of Plaintiff's religion. **D.E. 67 at 5, D.E. 70 at 3.** He argues, instead, that Defendant's statements, actions, and responses to his grievances establish a custom or implied policy or practice of prejudice and discrimination against inmates of his faith. **Id.** Specifically, Plaintiff complains that the jail ministry was unsuccessful in obtaining donations of religious materials for the practice of his faith, where it had been successful in obtaining such donations for other religions. **D.E. 15 at 4-5.** He attributes this success to the jail ministry taking additional or more meaningful steps in an effort to successfully provide for inmates of other faiths. **Id.**

Plaintiff, however, has not alleged nor provided evidence to establish the existence of a genuine issue of material fact regarding whether there exist inmates of other religions that were in fact similarly situated or whether the Jail Ministry took additional or more meaningful steps on behalf of any such inmate that ultimately resulted in success. Plaintiff's vague and conclusory allegations that there were similarly situated inmates and that the jail ministry did take such steps

on their behalf that were not taken on his are insufficient to overcome Defendant's motion for summary judgment.   Nor does the evidence in the record regarding statements, actions, and responses to grievances related to Plaintiff's attempts to practice his faith establish a custom, implied policy, or practice of prejudice.

Plaintiff also complains that there are no provisions in the El Paso County Jail Annex Jail Ministry Handout for his particular religion. **D.E. 35 at 3.**  The Court notes that the El Paso County Sheriff's Office Policies and Procedures Manual, Policy 10.04 regarding Jail Ministry does specifically provide for communion services and baptism. **D.E. 77 at 22.**  Although there is no explicit reference to a particular religion, these services appear to relate generally to Christianity. Plaintiff, however, does not allege what provisions should be included for his particular religion.

Even viewed in the light most favorable to Plaintiff, a rational trier of fact could not reasonably find in favor of Plaintiff on this issue based on the evidence in the record.  Rather, the pleadings and evidence of record demonstrate that Defendant is entitled to judgment as a matter of law as to Plaintiff's Equal Protection Claim.

**<u>CONCLUSION</u>**

Based on the foregoing, it is the **RECOMMENDATION** of this Court that:

(1)     Plaintiff's motion for summary judgment  (**D.E. 67, 70**) be **DENIED**;

(2)     Defendant's motion for summary judgment (**D.E. 77**) be **GRANTED**;

(3)     Any other pending motions not specifically addressed be **DENIED;**

(4)     Judgment be entered for Defendant; and

(5)     The case be closed.

**SIGNED** and **ENTERED** on September 1, 2010.

_____

MARGARET F. LEACHMAN
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN 14 (FOURTEEN) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT, SHALL BAR YOU, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE. FED. R. CIV. P. 72 (EFFECTIVE DEC. 1, 2009).**